## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRION DANIELS, Inmate #K75631,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| ROGER E. WALKER, JR., JACKIE MILLER, TERRI ANDERSON, RONALD MEEK, WARDEN EVANS, JULIUS FLAGG, KEN BARTLEY, C/O MATHIAS, C/O BAKER, C/O HANEGE, C/O ALVINS, SUE FERRARI, STEVE SROKA, LT. LAIRD, LIEUTENANT TOWNLEY, C/O BURNS, C/O HARTMAN, LT. GRACE, C/O McBRIDE, COLLEEN RENNISON, and JOHN HARRIS, | ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

Civil case number appears beside party block: **CIVIL NO. 06-312-MJR**

## **MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff, a former inmate in the Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Against Defendants Mathias, Baker, Evans, Hanege, Sroka, Ferrari, Flagg, Walker, Burns, Hartman, Grace, and McBride for deliberate indifference to his serious medical needs by denying him his heart and hypertension medications.

**COUNT 2:** Against Defendants Mathias, Baker, Evans, Hanege, Hartman, Flagg, and Meek for denying him soap and other hygiene items.

**COUNT 3:** Against Defendant Sroka, Grace, and McBride for disciplining him for violating prison rules.

**COUNT 4:** Against Defendants Laird, Hanege, Alvins, Sroka, Townley, and Burns for confiscating his legal papers.

**COUNT 5:** Against Defendant Rennison for denying him law library services.

**COUNT 6:** Against Defendants Evans, Walker, Miller, Anderson, Ferrari, Flagg, Hartman, Sroka, Grace, McBride, Harris, Meek, and Bartley for ignoring or denying his grievances.

**COUNT 7:** Against all defendants for retaliating against him for filing grievances and lawsuits.

**COUNT 1**

Plaintiff states that on April 15, 2004, while he was held in segregation at Pinckneyville Correctional Center, his medications for heart problems and hypertension and all of his hygiene items were confiscated. He asked Defendants Mathias, Baker, and Hanege for the items, but they would not provide them. Defendant Baker told Plaintiff that Warden Evans had ordered that Plaintiff not receive his medications in retaliation for filing grievances. Plaintiff also asked unspecified staff on the second shift to notify the Health Care Unit that he was not receiving his medications, and Plaintiff told unnamed staff on the third shift about his need for medications. Plaintiff filed an emergency grievance to Warden Evans regarding the medications and hygiene items. None of these efforts proved successful.

By April 17, 2004, after two days without his medications, Plaintiff was experiencing chest pain and headaches. By April 18, he began to have blurred vision in his left eye. By April 19, the pain was so intense that he could not sleep. He requested medical assistance, but his requests were ignored. On April 21, 2004, Plaintiff was transferred to Pontiac Correctional Center. On that day he received hygiene items. He was seen by medical staff and received his medications on April 24, 2004. All told, Plaintiff had to spend ten days without his medications, and during this time he experienced blurred vision, chest pain, and migraine headaches. He states that his vision became permanently blurred as a result of the time without his medications. He did not have hygiene items for seven days.

Later, at an unspecified time prior to January 2006, Plaintiff was transferred back to Pinckneyville. On January 18, 2006, Defendant Sroka charged Plaintiff with a disciplinary infraction and had him placed in segregation on investigative status. Plaintiff believes that Defendant Sroka falsely charged Plaintiff so that he could illegally confiscate his legal papers and

his medications. Plaintiff was denied his medications for fifteen days, from January 18 until February 1, 2006. As a result, he experienced blurred vision, migraine headaches, chest pain, kidney pain, sharp pain in his left arm, and weakness and numbness in his left hand. He sent grievances to the healthcare unit and to Defendant Ferrari, Director of Nursing, who continued to deny his medications. Plaintiff sent grievances to Warden Flagg and Director Walker, but they were either ignored or the responses were unsatisfactory.

Plaintiff states that his medications were again confiscated by Defendant Burns on March 20, 2006, along with legal documents, namely pleadings and exhibits he intended to file in this court. Plaintiff was denied the medications for ten days, and during this time he experienced chest pain, blurred vision, migraine headaches, kidney pain, and cramps in his left leg. All of Plaintiff's attempts to procure his medications were unsuccessful. His grievances to Defendants Hartman, Flagg, Sroka, Grace, and McBride did not resolve the problem. Plaintiff believes that Defendant Ferrari ordered the confiscation of the medications in retaliation for a threatening letter Plaintiff sent her.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he

> deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*,

- 5 -

82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Plaintiff states that he went without his medications for ten days in April 2004, fifteen days in January 2006, and ten days in March 2006, and that he experienced significant medical symptoms as a result of not having his medications. Further, Plaintiff's allegations suggest that the medications were withheld with the culpable state of mind to constitute deliberate indifference to his serious medical needs. Accordingly, Plaintiff may proceed on Count 1 of the complaint against Defendants Mathias, Baker, Evans, Hanege, Sroka, Ferrari, Flagg, Walker, Burns, Hartman, Grace, and McBride.

### COUNT 2

As described in Count 1, Plaintiff was denied all hygiene products for seven days in April 2004 by Defendants Mathias, Baker, Evans, and Hanege. Plaintiff also states that he was denied soap for 29 days between January 31, and March 1, 2006. Defendant Hartman denied Plaintiff's requests for free hygiene items because he was not indigent by prison rule. Plaintiff claims, however, that he had no money in his trust fund account, and his commissary order was not filled due to insufficient funds. He states that family members had sent him money, but that the money was "maliciously held and intentionally not credited to plaintiffs trust fund to prevent plaintiff from purchasing hygienic supply, envelopes and writing paper." Plaintiff sent grievances to Defendants

Flagg and Meek, but those grievances were ignored. Later, in retaliation for his grievances, Defendant Flagg ordered that Plaintiff be limited to one bar of soap per month. As a result, in March 2006, Plaintiff was forced to go 17 days without soap because he had depleted his one bar by March 11. As a result of the 29 and later 17 day soap deprivations, he developed a rash causing "stinging pain and constant itching."

Plaintiff's own submission to the court belie the assertion that he did not have funds in his account and was therefore unable to purchase soap. Plaintiff submitted with his request to proceed *in forma pauperis* in this action a copy of his trust fund account statement reflecting account activity between December 2005 and March 2006. At no point between January 30 and March 1, 2006, does Plaintiff have a negative balance in his account, and on February 16, 2006, $200 was credited to his account. Plaintiff submits a denied commissary request slip as an exhibit, however, the slip is undated, so the Court cannot determine whether this exhibit reflects a denial during the applicable time period.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic

human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346 ; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is

satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22.  It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

No constitutional principle requires that inmates be permitted to own or receive hygiene items for the sake of owning cosmetics, but the deprivation of essential items may leave a prisoner exposed to the elements, or unable to care for his most fundamental needs, and thereby put his health in jeopardy and at that point, a constitutional right may be implicated.  In *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), the Seventh Circuit considered an inmate's claim that he was denied toilet paper for five days and denied soap, a toothbrush and toothpaste for ten days, while "he was kept in a filthy, roach-infested cell." *Id.* at 1234.  The Circuit noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Id.* at 1235-36.  The Circuit then noted that "[a]lthough Harris experienced considerable unpleasantness, he suffered no physical harm," *id.* at 1235, and found that the conditions simply did not rise to the level of an Eighth Amendment violation.

Although the Court doubts Plaintiff's contention that he did not have sufficient funds to purchase soap from the commissary, based on the legal standards described above, the Court finds that the deprivations of personal hygiene items alleged in the complaint, and the resulting skin problem Plaintiff endured, are sufficient to state a claim.  Accordingly, Plaintiff may proceed on Count 2 of the complaint against Defendants Mathias, Baker, Evans, Hanege, Hartman, Flagg, and

Meek.

## COUNT 3

On January 31, 2006, Defendant Sroka charged Plaintiff with possession of contraband, specifically, a razor and a false-bottom gym shoe. Plaintiff states the items did not belong to him, but to unnamed gang members in the prison who forced him to keep these items under threat of physical harm. After a disciplinary hearing, Plaintiff was found guilty by Defendant Grace and McBride. He was disciplined with two months in segregation, a two-month demotion to c-grade, and a one-month loss of good conduct credit.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the

entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for two months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Plaintiff's due process claim as to his time in segregation is without merit.

Plaintiff was also demoted to c-grade for two months. However, this deprivation does not present a viable constitutional claim. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to c-grade status).

A loss of good conduct credit, however, does implicate a liberty interest because such a loss potentially affects the length of Plaintiff's sentence. As such, Plaintiff does present a cognizable due process claim regarding good time credit revoked in the January 2006 disciplinary proceeding. However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck* v. Humphrey, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill.App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq*. to consider the merits of Plaintiff's claim. Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his

claims in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.

### COUNT 4

Plaintiff alleges that between December 2005 and March 2006 Defendants Laird, Hanege, Alvins, Sroka, Townley, and Burns confiscated his legal papers, including complaints alleging civil rights violations in prison that he had prepared for filing in federal court.

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins,* 977 F.2d at 268 (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins*, 977 F.2d at 268; *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 n.2 (7th Cir. 1987). That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid,* 969 F.2d at 603. A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a

conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Plaintiff's complaint spells out "in minimal detail" that his legal documents were confiscated, and that as a result he was prevented from filing lawsuits. Accordingly, Plaintiff may proceed on Count 4 of the complaint against Defendants Laird, Hanege, Alvins, Sroka, Townley, and Burns.

### COUNT 5

Plaintiff alleges that he sent numerous grievances to prison officials, and he sent a large packet detailing his mistreatment at Pinckneyville to Defendant John Harris, the Chief of Staff of the Governor of Illinois. After Defendant Harris received the package, Plaintiff's library services were denied, including access to legal documents, grievance forms, notary services, and photocopies. Plaintiff states that Defendant Rennison, a paralegal at the prison law library, acted in concert with other Illinois Department of Corrections ("IDOC") officials to "restrict plaintiff from seeking redress in a court of law."

"[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall*, 445 F.3d at 968. A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.*

Unlike the description of confiscated legal papers in Count 4, Plaintiff here has not sufficiently stated a claim of denial of access to the courts because he does not indicate any prejudice to a "potentially meritorious challenge" to his conviction, sentence, or conditions of confinement.

Although he has stated a sufficient timeline to reflect unconstitutional retaliation (as discussed in Count 7, below), he has not stated an access-to-courts claim on these facts. Accordingly, Count 5 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 6

Throughout the complaint, Plaintiff alleges that his grievances regarding the issues raised in Counts 1-5 were either ignored or denied. He names Defendants Evans, Walker, Miller, Anderson, Ferrari, Flagg, Hartman, Sroka, Grace, McBride, Harris, Meek, and Bartley as individuals who did not resolve his grievances to his satisfaction.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Based on these legal standards, Plaintiff has not stated an independent claim regarding the denial of his grievances. Accordingly, Count 6 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 7

Finally, Plaintiff states that all of the actions described in the complaint were taken against him in retaliation for filing grievances and for seeking relief in court.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[all that need be specified

is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* Based on these legal standards, Plaintiff has sufficiently stated a claim of retaliation against all defendants listed in the complaint. Accordingly, he may proceed on Count 7 against all defendants.

## DISPOSITION

Plaintiff may proceed on Count 1 against Defendants Mathias, Baker, Evans, Hanege, Sroka, Ferrari, Flagg, Walker, Burns, Hartman, Grace, and McBride; on Count 2 against Defendants Mathias, Baker, Evans, Hanege, Hartman, Flagg, and Meek; on Count 4 against Defendants Laird, Hanege, Alvins, Sroka, Townley, and Burns; and on Count 7 against Defendants Walker, Miller, Anderson, Meek, Evans, Flagg, Bartley, Mathias, Baker, Hanege, Alvins, Ferrari, Sroka, Laird, Townley, Burns, Hartman, Grace, McBride, Rennison, and Harris. Counts 3, 5, and 6 are **DISMISSED** from the action as described above.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for *Defendants Walker, Miller, Anderson, Meek, Evans, Flagg, Bartley, Mathias, Baker, Hanege, Alvins, Ferrari, Sroka, Laird, Townley, Burns, Hartman, Grace, McBride, Rennison, and Harris*. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on *Defendants Walker, Miller, Anderson, Meek, Evans, Flagg, Bartley, Mathias, Baker, Hanege, Alvins, Ferrari, Sroka, Laird, Townley, Burns, Hartman,*

*Grace, McBride, Rennison, and Harris* in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the U.S.M.-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional

copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 14th day of May, 2007.**

                                              **s/ Michael J. Reagan**
                                              **MICHAEL J. REAGAN**
                                              **United States District Judge**